# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHALLENGER TRADING S.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 1:16-cv-00409-LPS |
| VALESKA SHIPPING LINES LIMITED (T/A | ) |
| VALESKA NIGERIA) ET AL., | ) |
| | ) Judge Leonard P. Stark |
| Defendants, | ) |
| | ) **Related to Docket Nos. 12 and 17** |
| And | ) |
| | ) |
| GODADDY.COM LLC | ) |
| | ) |
| Garnishee. | ) |
| | ) |

**REPLY IN FURTHER SUPPORT OF MOTION TO VACATE ORDER OF ATTACHMENT AND GARNISHMENT AND REQUEST FOR EXPEDITED HEARING PURSUANT TO ADMIRALTY RULE E(4)(F) AND ATTORNEYS' FEES AND COSTS**

Patrick J. Reilley (No. 4451)
COLE SCHOTZ P.C.
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Tel: (302) 651-2004
preilley@coleschotz.com

Benjamin J. Razi, *pro hac vice*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-6000
brazi@cov.com

*Attorneys for Defendants Valeska Shipping Lines Limited, Aiteo Group, Aiteo Energy Resources Limited, and Non-Party Oliver Okafor*

Date: August 10, 2016

**PRELIMINARY STATEMENT**

Challenger's most recent filings confirm that there is no basis for attachment in this case. In what amounts to an admission that its original complaint was insufficient to secure the attachment order, Challenger has now filed an Amended Complaint. But, even with its Amended Complaint, Challenger has not cured the many deficiencies identified by Defendants in their moving papers.

As confirmed by Challenger's Amended Complaint, it is undisputed that Challenger ***has no admiralty claim against Aiteo***. And Challenger's Amended Complaint fails—as did the original complaint—to allege facts sufficient to show that Valeska is the "alter ego" of Aiteo. Additionally, Challenger does not dispute that neither Valeska nor Aiteo is the registrant of the domain names, so Challenger cannot show—as it must—that the domain names are property belonging to Defendants. Finally, Challenger misses the mark with its argument that domain names are property. The issue here is whether domain names are property *subject to garnishment*, which as the product of a contract for services, they are not. As underscored by its failed attempt at amendment, Challenger lacked a good faith basis for the attachment. The attachment should be immediately vacated.

**I.      CHALLENGER'S "ALTER EGO" CLAIM FAILS.**

"[I]t is the ***exceptional*** instance where a court will disregard the corporate form." *Mobil Oil Corp v. Linear Films, Inc.*, 718 F. Supp. 260, 270 (D. Del. 1989) (emphasis added) (internal citation and quotation mark omitted). And yet, because it has no admiralty claim against Aiteo, Challenger seeks to have this Court disregard Valeska's and Aiteo's corporate form and hold Aiteo responsible for Valeska's alleged liabilities.

Defendants demonstrated in their moving papers that Challenger had fallen far short of meeting this "notoriously difficult"[1] burden, highlighting that Challenger had ***failed to allege even one of the facts*** that this Circuit has identified as justifying the "exceptional" imposition of alter ego liability. *See* Mot. to Vacate Order of Attachment & Garnishment ("Mot."), at 6–7, filed July 21, 2016, D.I. 12. These facts—none of which are alleged in this case—include gross undercapitalization, failure to observe corporate formalities, siphoning of funds, nonfunctioning of officers and directors, and an absence of corporate records. *See Trustees of Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003).

Like its original complaint, Challenger's Amended Complaint fails to allege any of the facts identified by the Third Circuit as supporting alter ego liability. For example, in the case of a closely held corporation like Valeska, undercapitalization is pivotal. *See DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 685 (4th Cir. 1976) ("One fact which all the authorities consider significant in the inquiry, and particularly so in the case of the one-man or closely-held corporation, is whether the corporation was grossly undercapitalized for the purposes of the corporate undertaking."). Yet nowhere in the Amended Complaint has Challenger alleged that Valeska is or has ever been undercapitalized.

Recognizing the weaknesses in its alter ego claim, Challenger spends several pages essentially arguing that this Court need not consider the factors articulated by the Third Circuit in *Lutyk*. But the law does not support Challenger's relaxed approach to piercing the corporate veil. In fact, courts in this Circuit have consistently relied on the *Lutyk* factors to guide their alter ego analyses. *See StrikeForce Techs., Inc. v. PhoneFactor, Inc.*, No. CV 13-490-RGA-MPT, 2013 WL 6002850, at *4 (D. Del. Nov. 13, 2013), as amended (Nov. 14, 2013) (relying on *Lutyk*

---

[1] *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001).

40000/0600-13462964v1

factors); *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F. Supp. 1076, 1085 (D. Del. 1990), *aff'd*, 932 F.2d 959 (3d Cir. 1991) (noting that "no single factor could justify a decision to disregard the corporate entity, but that some combination of them was required" (internal quotation mark omitted)). It is telling that **_none_** of the *Lutyk* factors have been alleged here.

Ignoring the Third Circuit standard, the Amended Complaint instead purports to base its alter ego claim on the allegation that Aiteo and Valeska share office space and certain owners, directors, and employees. Even assuming the truth of these allegations, they are insufficient to justify veil piercing. *See Mobil Oil*, 718 F. Supp. at 267 (corporation and subsidiary were not "alter egos" where subsidiary and parent "shared common officers and directors"); *see also Waite v. Schoenbach*, No. 10 Civ. 3439, 2010 WL 4456955, at *4 (S.D.N.Y. Oct. 29, 2010) (allegation that parent and subsidiaries "operate at the same location and share employees, officers, owners, and bank accounts" insufficient to pierce corporate veil (internal quotation marks omitted)); *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 404 (S.D.N.Y. 2007) (common address, common ownership, and common principals and owners insufficient to pierce the corporate veil).

As Challenger recognizes, even if it had adequately plead that Valeska and Aiteo disregarded corporate formalities, it must also have alleged facts showing that use of the corporate form would cause fraud or injustice. *See, e.g.*, *StrikeForce Techs.*, 2013 WL 6002850, at *4 (plaintiff failed to plead alter ego liability when it "fail[ed] address any of the[] factors [listed in *Lutyk*] in the Amended Complaint or allege anything suggesting fraud or other similar injustice"). Challenger's Amended Complaint makes no such allegations of fraud or injustice. Given the absence of factual allegations supporting any of the *Lutyk* factors, fraud, or injustice, Challenger has failed entirely to allege the "**_exceptional circumstances_**" necessary for this Court

3

to pierce the corporate veil. *Mobil Oil*, 718 F. Supp. at 270 (emphasis added). Accordingly, the attachment order against property allegedly belonging to Aiteo must be vacated.

## II.     THE DOMAIN NAMES ARE NOT THE "<u>DEFENDANT'S</u> PROPERTY."

In their moving papers, Defendants showed that Challenger had failed to satisfy Rule B's requirement that Defendants have an ownership interest in the attached property. Mot. at 7-8; *see also* Fed. R. Civ. P., Supp. R. B(1)(a) (permitting attachment of "***the defendant's . . . property***" in certain circumstances) (emphasis added). Indeed, Defendants presented evidence that Oliver Okafor, a third party who has since joined in Defendants' motion, registered the domain names. Mot., Okafor Decl. ¶ 2. Challenger does not refute these dispositive facts regarding Defendants' lack of ownership of the domain names. Defendants also pointed out that one court had already considered the precise issue here—whether a domain name registered by a third party was "the property of the defendant" sufficient for attachment under Rule B—and concluded that it was not, vacating the attachment. *Bunkers Int'l Corp. v. Carreira Pitti*, P.C., No. 1:11cv803, 2012 WL 996855, at *2–*3 (E.D. Va. March 22, 2012).

In response, Challenger seeks to walk away from the black-letter rule that only the "defendant's . . . property" (Rule B(1)(a)) can be attached, as well as Challenger's own prior admissions. "***[O]wnership of the assets [is] a criterion*** of their attachability." That is what Challenger said in its motion for attachment.[2] "For maritime attachments under Rule B … ***the question of ownership is critical***." That is what the Second Circuit said in *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 69 (2d Cir. 2009) (emphasis added). Recognizing that it has no proof that Valeska or Aiteo owned the domain names, Challenger now

---

[2] Mot. & Mem. for Order Authorizing Issue of Writ of Maritime Attachment & Garnishment, at 2, filed June 3, 2016, D.I. 4 (emphasis added).

claims that a "possessory interest" or some other vague, undefined, even lesser interest in the property is all that is needed for attachment under Rule B.[3]

Even if a possessory interest were sufficient, though, Challenger has failed to show that Defendants have such an interest in the domain names—nor could they. The domain name registration agreement is between GoDaddy and Okafor. *See* Mot., Okafor Decl. ¶ 4. Thus, Challenger's claim that "common sense" dictates that Defendants have "the legal right to exclusive use"[4] is wholly contradicted by the terms of the registration agreement between GoDaddy and Okafor.

In the face of obvious parallels between this case and *Bunkers*, Challenger claims that the "plaintiff [in *Bunkers*] was unable to show that the defendant had an interest in the domain name" and that Defendants have "admitted that they have an interest in the domain name." Resp. at 11. Challenger, though, confuses the requirement under Rule B that the attached property belong to the defendant with Rule E's statement that "any party claiming an interest in [the property] shall be entitled to a prompt hearing" to contest its attachment. It is clear that the *Bunkers* court was concerned with Rule B's requirement that the property belong to the defendant. As in *Bunkers*, the domain names here do not belong to Defendants. Certainly a party can have an interest in the property for purposes of Rule E even if the property does not belong to that party. *See, e.g., Richardson Stevedoring & Logistics Servs., Inc. v. Daebo Int'l*

---

[3] The cases cited by Challenger do not support attachment in this case. In *Alaska Reefer Management LLC v. Network Shipping Ltd.*, 68 F. Supp. 3d 383, 386–89 (S.D.N.Y. 2014), the court vacated the attachment order for bank funds that were erroneously transferred from one bank account to another. *World Fuel Services, Inc. v. SE Shipping Lines Pte., Ltd.*, No. 10-4605, 2011 WL 446653, at *1 (E.D. La. 2011), is distinguishable because in that case there was evidence that the defendant had the right to use, possess, and sell the property. And *HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas Y Oleicos S.A. DE C.V.*, No. 04 Civ. 6884, 2005 WL 1036127 (S.D.N.Y. 2005) upheld the attachment of electronic funds transfers and is no longer good law. *See Jaldhi*, 585 F.3d at 69.

[4] Resp. in Opp'n to Mot. to Vacate ("Resp."), at 11, filed Aug. 5, 2016, D.I. 21.

*Shipping Co.*, No. CIV.A. 15-490, 2015 WL 893518, at *2–*3 (E.D. La. Mar. 2, 2015) (time-charterer of vessel had standing to contest attachment even though time-charterer was not the owner of the ship).

In a last-ditch effort at distancing itself from *Bunkers*, Challenger states that the plaintiff there had the benefit of discovery. Challenger's Amended Complaint, though, contains no factual allegations that, if true, would provide a basis for concluding that the domain names are property belonging to Defendants. Thus, discovery is not necessary or appropriate. *See, e.g.*, *StrikeForce*, 2013 WL 6002850, at *5 ("T[he] requirement [for a well-pled complaint] 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" (internal citations omitted)).

### III. DOMAIN NAMES ARE NOT PROPERTY <u>SUBJECT TO ATTACHMENT AND GARNISHMENT</u>.

Lastly, Defendants showed in their moving papers that even if they were the registrants of the domain names, which it is now undisputed that they are not, the domain names cannot be garnished as a matter of law. In the absence of any federal maritime law on this issue, Defendants drew on the reasoning in *Network Solutions, Inc. v. Umbro International, Inc.*, 529 S.E.2d 80, 86 (Va. 2000), a case considering whether domain names were property subject to garnishment under state law. That court concluded that a domain name registrant acquired a contractual right that was "inextricably bound to the domain name services that [the registrant] provides," and that such contract for services was not subject to garnishment under state law. *Id.* As the domain name registration agreement between GoDaddy and Okafor is likewise merely a contract for services, *see* Mot., Okafor Decl. ¶ 4, Exhibit 2, this contract for services does not confer on any party a *garnishable* property right.

Challenger argues in response that domain names are property. Defendants, however, have not taken the position that domain names are not property—an issue the Court need not reach—but instead have explained that domain names are not property *subject to attachment or garnishment*. *See* Mot. at 8–9. The cases cited by Challenger are thus inapposite as they address whether domain names are property in various contexts not relevant here. For example, in *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003), the court held that a registrant had an intangible property right in a domain name under California law for purposes of conversion. And in *In re Paige*, 413 B.R. 882, 907–12 (Bankr. D. Utah 2009), *aff'd*, 443 B.R. 878 (D. Utah 2011), *aff'd in part*, *rev'd in part*, 685 F.3d 1160 (10th Cir. 2012), the court held that a domain name was property that was part of a bankruptcy estate. These courts' analyses have no bearing here as they do not address whether domain names are property *subject to garnishment*. Indeed, *Umbro* concluded that it need not decide whether a domain name was a form of intellectual property because "[i]rrespective of how a domain name is classified," as the product of a contract for services, it could not be garnished as a matter of law. That same reasoning applies here.

## **CONCLUSION**

For the foregoing reasons, the Order of Attachment and Garnishment should be vacated, and Defendants should be granted an expedited hearing pursuant to Rule E(4)(f). Further, because Challenger lacked a good faith basis for bringing this action, Defendants should be awarded attorneys' fees and costs.

    Respectfully submitted,

    /s/ *Patrick J. Reilley*
    Patrick J. Reilley (No. 4451)
    COLE SCHOTZ P.C.
    500 Delaware Avenue, Suite 1410
    Wilmington, Delaware 19801
    Tel: (302) 651-2004
    preilley@coleschotz.com

7

Benjamin J. Razi, *pro hac vice*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-6000
brazi@cov.com

*Attorneys for Defendants Valeska Shipping Lines Limited, Aiteo Group, Aiteo Energy Resources Limited, and Non-Party Oliver Okafor*

Date: August 10, 2016